# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| THE CLEMENT GROUP, LLC., | § § | |
| v. | § § | |
| ETD SERVICES, LLC., D/B/A THE DAVITZ GROUP; E. EARL DAVIS, II; TARA DAVIS, | § § § § § | Civil Action No. 4:16-cv-00773 Judge Mazzant |
| v. | § § § | |
| BILL'S BOOKKEEPING SERVICES, LLC. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Third Party Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #22). After reviewing the pleadings, the Court finds the motion should be denied.

### BACKGROUND

The Clement Group, LLC ("Clement"), is an Alabama-based company operating in Montgomery, Alabama (Dkt. #10 at p. 11). Clement's members are Alabama citizens (Dkt. #10 at p. 12). ETD Services, LLC d/b/a The Davitz Group ("ETD"), is a Texas-based company operating in McKinney, Texas (Dkt. #10 at p. 10). ETD's sole member is a Texas citizen (Dkt. #10 at p. 12). Bill's Bookkeeping Services, LLC ("BBS") is an Alabama-based company operating in Montgomery, Alabama (Dkt. #10 at p. 11). BBS's members are Alabama citizens (Dkt. #10 at p. 12).

Both Clement and ETD operate as construction companies (Dkt. #10). On May 3, 2013, Clement and ETD agreed to become partners as part of the United States Small Business

1

Association's Mentor/ Protégé Program (the "SBA Mentor Program") (Dkt. #10 at p. 17). Under this program, ETD, the protégé, sought to gain business insight and experience in providing contacting services to federal government agencies in construction and renovation projects on military installations (Dkt. #10 at p. 17). The program allowed joint ventures between Clement and ETD to bid for federal contracts for which the companies individually would otherwise not have been eligible to bid (Dkt. #10 at p. 17).

On or about May 2014, ETD and Clement formed a joint venture known as ETD-TCG, LLC (Dkt. #10 at p. 18). On July 17, 2014, ETD and Clement entered into a Joint Venture Agreement to bid for projects involving construction services for the United States Army Corp of Engineers (the "USACE"), Norfolk District (Dkt. #10 at p. 18). On August 12, 2014 and December 18, 2014, ETD-TCG, LLC entered into two addenda to the Joint Venture Agreement to provide construction services for the USACE, Mobile District (Dkt. #10 at p. 18). On January 20, 2015, ETD-TCG, LLC entered into another addendum to the Joint Venture Agreement to provide design-build construction services to the USACE, Louisville District (collectively, the "Joint Ventures") (Dkt. #10 at p. 19).

Prior to Clement and ETD forming ETD-TCG, LLC, BBS performed bookkeeping services for Clement (Dkt. #22, Exhibit 1 at ¶ 10). BBS managed a "pooling arrangement" in which participants contributed a percentage of their revenue from construction projects to a general fund. Participants could use the fund to pay their overhead expenses as well as direct and indirect costs (Dkt. #10 at p. 15). ETD alleges it was required to participate in the "pooling arrangement" as part of the Joint Ventures (Dkt. #10 at p. 16).

According to ETD's managing member, Earl Davis, the "pooling arrangement" included all of ETD's project in "any location and particularly its projects in Texas." (Dkt. #27, Davis

Decl. ¶ 11). Davis states that BBs provided "significant project management oversight for all the construction projects in which ETD was engaged throughout Texas and the United States" (Dkt. #27, Davis Decl. ¶ 12). The project oversight included oversight of the bidding opportunities, preparation of bids, management of project budgets, management of contract acquisition and execution for subcontractors, job costs and profit estimation, and payment of bonds for projects in Texas and elsewhere (Dkt. #27, Davis Decl. ¶ 13–15). Davis further states that BBS provided and organized marketing efforts for the participants of the "pooling arrangement" for areas including Texas (Dkt. #27, Davis Decl. ¶ 13). Davis states that BBS was responsible for bid solicitation of construction projects in Fort Hood in Kileen, Texas, the Veterans Administration facility in Dallas, Texas and Fort Sam Houston in San Antonio, Texas (Dkt. #27, Davis Decl. ¶ 14). According to Davis, BBS maintained relationships with the United States Small Business Association in Fort Worth, Texas for the purpose of managing construction contracts that fell within the oversight of that Small Business Association (Dkt. #27, Davis Decl. ¶ 15).

ETD alleges that "from the beginning of the operation of the Joint Ventures" ETD expressed concerns to Clement that "all did not seem appropriate with respect to the allocations for costs and expenses of the Joint Ventures, the profits and losses of the Joint Ventures." (Dkt. #10 at p. 19). ETD alleges it received limited financial reports and that BBS and Clement ignored its requests for project information and pay requests (Dkt. #10 at p. 19–20). Specifically, ETD alleges that in September 2015, it sought bonding coverage for a construction project in Arkansas from Baldwin Cox (Dkt. #10 at p. 20). ETD alleges that as part of its bond application, it provided Baldwin Cox a set of financial records prepared by BBS (Dkt. #10 at p 20). ETD alleges that Baldwin Cox found the financial records reflected a $1.1 million distribution to ETD's

3

members (Dkt. #10 at p. 20). ETD alleges that during that same period, BBS advised Earl Davis that ETD's financial records reflected at $600,000 loss (Dkt. #10 at p. 20).

ETD alleges it continued to ask BBS and Clement about this apparent discrepancy and BBS and Clement refused to respond to ETD. ETD alleges that, on information and belief, Clement and BBS charged ETD-TCG, LLC excessive consulting fees (Dkt. #10 at p. 20). ETD alleges that Clement and BBS were unjustly enriched by portions of ETD-TCG, LLC's assets to which they were not entitled, that Clement and BBS misdirected funds that should have been paid to ETD-TCG, LLC, and that BBS's representations regarding the "pooling arrangement" were false, misleading, and deceptive (Dkt. #10 at pp. 27–28).

On October 7, 2016, Clement brought suit against ETD, alleging breach of contract, breach of fiduciary duty, defamation, conversion, unjust enrichment and fraud (Dkt. #1). Clement alleged ETD breached the Joint Venture Agreement and withdrew funds from ETD-TCG, LLC accounts without Clement's approval (Dkt. #1)

On December 26, 2016, ETD filed a First Amended Original Answer, Affirmative Defenses, and Counter-Complaint (Dkt. #10). ETD brought counter-claims against Clement for breach of contract, breach of fiduciary duty, unjust enrichment, common law fraud, and statutory fraud under the Texas Deceptive Trade Practices Act ("DTPA") (Dkt. #10). ETD's Counter-Complaint included a Third-Party Complaint against BBS alleging unjust enrichment, common law fraud, and statutory fraud under the DTPA (Dkt. #10). [1]

On March 15, 2017, BBS filed the pending Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #22). On April 7, 2017, ETD filed a response (Dkt. #27). On April 14, 2017, BBS filed a reply (Dkt. #28).

---

[1] The Court granted ETD's motion for leave to re-plead its common law fraud claim.

## LEGAL STANDARD

*Personal Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a prima facie case supporting jurisdiction." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, the court must accept as true the plaintiff's uncontroverted allegations and resolve factual conflicts in favor of the plaintiff. *Id.*

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the exercise of personal jurisdiction comports with the due process clause of the Fourteenth Amendment. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016). Because the Texas long-arm statute extends as far as constitutional due process permits, a court only needs to determine whether a suit in Texas is consistent with the due process clause of the Fourteenth Amendment. *Id.*

The due process clause requires that a court exercise personal jurisdiction over a nonresident defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

*General Jurisdiction*

General jurisdiction occurs when "a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). General jurisdiction exists only when the defendant's contacts with the State constitute "continuous and systematic" general contacts with the forum. *Id.* at 416. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). The inquiry is not whether a corporation's "in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 761 (citing *Goodyear*, 564 U.S. at 919).

A corporation is fairly regarded as at home in its place of incorporation and principal place of business. *Id.* at 760. General jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762 n.20. Other courts have held that the *Daimler* "essentially at home" standard applies to unincorporated associations. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016) ("*Daimler*'s reasoning was based on an analogy to general jurisdiction over individuals, and there is no reason to invent a different test for general personal jurisdiction depending on whether the defendant is an individual, a corporation, or another entity"); *Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 19, 29 (D.D.C. 2015).

ETD bears the burden of producing sufficient facts to support "a prima facie" case supporting this Court's jurisdiction over BBS. BBS operates an office in Alabama. BBS is an Alabama corporation with Alabama members. BBS's employees have not traveled to Texas for any of the transactions in dispute in this case. ETD made no argument that this Court should exercise general jurisdiction over BBS in its response, except to state "[BBS] is properly subject to personal jurisdiction in Texas under the precepts of general jurisdiction and specific jurisdiction" (Dkt. #27 at p. 4). That conclusion was not supported by any specific facts as to how BBS's actions could amount to the "continuous and systematic" actions required by *Goodyear* or *Daimler* in order to be "at home" in Texas. There are no facts, presented by ETD or otherwise, to support a prima facie case that BBS is "at home" in Texas. The Court therefore does not have general jurisdiction over BBS.

*Specific Jurisdiction*

The Fifth Circuit follows a three-step analysis in determining whether a court has specific personal jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" *Id.* (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)). Even a single act by a defendant may establish specific jurisdiction if the act in the forum state is

substantially related to the suit. *See Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

Once a plaintiff establishes that the defendant had minimum contacts with the forum state sufficient to permit specific jurisdiction, the burden shifts to the defendant to prove that the exercise of jurisdiction is not fair or reasonable. *McFadin*, 587 F.3d at 759. In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985). "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin*, 587 F.3d at 760 (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

*Minimum Contacts*

ETD alleges that BBS provided bookkeeping services for ETD's Texas-area projects (Dkt. #27, Davis Decl. at ¶ 9). ETD also alleges that BBS managed an accounting "pooling arrangement" that required ETD to contribute its revenue to an account managed by BBS (Dkt. #27, Davis Decl. at ¶ 11). This "pooling arrangement" included all of ETD's projects in Texas (Dkt. #27, Davis Decl. at ¶ 11). ETD alleges that as part of the "pooling arrangement," BBS performed management services for ETD's projects (Dkt. #27, Davis Decl. at ¶ 15). Part of that project management included solicitation and preparation of bids for ETD projects in Texas (Dkt. #27, Davis Decl. at ¶ 12). Correspondence between BBS and ETD confirm that BBS solicited bids for six Texas projects on behalf of ETD and sought to solicit more (Dkt. #27 at p. 7): (Dkt. #27, Exhibit 6). ETD also alleges that BBS provided marketing efforts in Texas, among

other places, for the participants of the "pooling arrangement," including ETD (Dkt. #27, Davis Decl. at ¶ 13). ETD presented evidence that BBS frequently held meetings with ETD and others to provide proposals, marketing materials, and project opportunities for construction projects (Dkt. #27, Exhibit 3). ETD alleges that BBS received a payment for each project completed by ETD, including Texas projects, in the amount of ten percent of the project profit (Dkt. #27, Davis Decl. at ¶ 20). Each time BBS reached out to a Texas company to solicit bids on behalf of ETD, BBS stood to make a profit.

The solicitation, marketing, and management of projects in Texas on behalf of ETD are deliberate actions extending into Texas that satisfy the minimum contacts requirement of specific jurisdiction analysis.

*Causes of Action in Relation to Minimum Contacts*

ETD brings causes of action against BBS for unjust enrichment, common law fraud, and statutory fraud. ETD alleges that its claims against BBS arise out of the financial management of the BBS's "pooling arrangement." ETD alleges that the "capture of profits and allocation of excessive fees to BBS and other participants of the pooling arrangement are the essence of ETD's complaint" (Dkt. #27 at p. 10). ETD also alleges the "ultimate effect of the pooling arrangement brokered and managed by BBS was to control the cash flow of ETD's construction projects, including its projects in Texas" (Dkt. #27 at p. 8).

The Supreme Court recently reiterated that in order to establish personal jurisdiction, the claims brought must specifically relate to the defendant's minimum contacts in the forum state. *Bristol-Myers Squibb Co. v. Sup. Ct. of California*, 137 S.Ct. 1773 (2017). Here, ETD's unjust enrichment claim and statutory fraud claim relate to the manner in which BBS managed the "pooling arrangement." ETD alleges BBS wrongfully withheld funds belonging to ETD or ETD-

9

TCG, LLC (Dkt. #10 at p. 27). ETD alleges BBS's representations regarding the "pooling arrangement" were false, misleading, and deceptive (Dkt. #29 at pp. 28–29). BBS managed the "pooling arrangement" by marketing and soliciting bids for the participants, in exchange for ten percent of the participant's profits. Some of those solicitations were to Texas companies on behalf of ETD. BBS also provided management of project budgets, management of contract acquisition and execution for subcontractors, job costs and profit estimation, and payment of bonds for projects in Texas and elsewhere (Dkt. #27, Davis Decl. ¶ 13–15). According to Davis, BBS maintained relationships with the United States Small Business Association in Fort Worth, Texas for the purpose of managing construction contracts that fell within the oversight of that Small Business Association (Dkt. #27, Davis Decl. ¶ 15). BBS's management of the "pooling arrangement" is the basis for ETD's unjust enrichment and fraud claims. Therefore, ETD's causes of action arise from BBS's Texas-related contacts. ETD has presented a prima facie case supporting the Court's specific jurisdiction over BBS.

*Fair and Reasonable Personal Jurisdiction*

Lastly, the Court addresses whether the assertion of personal jurisdiction would be fair and reasonable. It is rare to say that the assertion of jurisdiction is unfair once minimum contacts have been established. *McFadin*, 587 F.3d at 760. Because minimum contacts have been established, and the Court finds ETD's causes of action relate to those minimum contacts, the burden shifts to BBS to prove the Court's exercise of jurisdiction is not fair or reasonable. BBS, however, did not make any argument to the Court that the exercise of jurisdiction would not be fair or reasonable. Further, BBS should have reasonably anticipated being haled into a Texas court due to its connections with Texas, through the solicitation and management of ETD contracts in Texas. The Court finds that asserting personal jurisdiction over BBS would be fair and reasonable.

## CONCLUSION

It is therefore **ORDERED** that Third Party Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #22) is hereby **DENIED**.

**SIGNED this 12th day of July, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE