# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| THE CLEMENT GROUP, LLC., | § | |
| | § | |
| v. | § | |
| | § | |
| ETD SERVICES, LLC., D/B/A THE DAVITZ GROUP; | § § | Civil Action No. 4:16-cv-00773 |
| E. EARL DAVIS, II; | § | Judge Mazzant |
| TARA DAVIS, | § | |
| | § | |
| v. | § | |
| | § | |
| BILL'S BOOKKEEPING SERVICES, LLC. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Partial Motion to Dismiss Defendants' First Amended Counterclaim (Dkt. #13). After reviewing the pleadings, the Court finds the motion should be denied.

### BACKGROUND

The Clement Group, LLC ("Clement"), is an Alabama-based company operating in Montgomery, Alabama (Dkt. #10 at p. 11). Clement's members are Alabama citizens (Dkt. #10 at p. 12). ETD Services, LLC d/b/a The Davitz Group ("ETD"), is a Texas-based company operating in McKinney, Texas (Dkt. #10 at p. 10). ETD's sole member is a Texas citizen (Dkt. #10 at p. 12). Bill's Bookkeeping Services, LLC ("BBS") is an Alabama-based company operating in Montgomery, Alabama (Dkt. #10 at p. 11). BBS's members are Alabama citizens (Dkt. #10 at p. 12).

Both Clement and ETD operate as construction companies (Dkt. #10). On May 3, 2013, Clement and ETD agreed to become partners as part of the United States Small Business

1

Association's Mentor/Protégé Program (the "SBA Mentor Program") (Dkt. #10 at p. 17). Under this program, ETD, the protégé, sought to gain business insight and experience in providing contacting services to federal government agencies in construction and renovation projects on military installations (Dkt. #10 at p. 17). The program allowed joint ventures between Clement and ETD to bid for federal contracts for which the companies individually would otherwise not have been eligible to bid (Dkt. #10 at p. 17). ETD alleges that Craig Clement, the president of Clement, represented to Earl Davis, ETD's sole member, that he had the experience and knowledge to utilize the opportunities provided by the SBA Mentor Program (Dkt. #10 at p. 18).

On or about May 2014, ETD and Clement formed a joint venture known as ETD-TCG, LLC (Dkt. #10 at p. 18). On July 17, 2014, ETD and Clement entered into a Joint Venture Agreement to bid for projects involving construction services for the United States Army Corp of Engineers (the "USACE"), Norfolk District (Dkt. #10 at p. 18). On August 12, 2014 and December 18, 2014, ETD-TCG, LLC entered into two addenda to the Joint Venture Agreement to provide construction services for the USACE, Mobile District (Dkt. #10 at p. 18). On January 20, 2015, ETD-TCG, LLC entered into another addendum to the Joint Venture Agreement to provide design-build construction services to the USACE, Louisville District (collectively, the "Joint Ventures") (Dkt. #10 at p. 19).

Prior to Clement and ETD forming ETD-TCG, LLC, BBS performed bookkeeping services for Clement (Dkt. #10 at p. 15). BBS managed a "pooling arrangement" in which participants contributed a percentage of their revenue from construction projects to a general fund managed by BBS (Dkt. #10 at p. 15). Participants could use the fund to pay their overhead expenses as well as direct and indirect costs (Dkt. #10 at p. 15). ETD alleges it was required to participate in the "pooling arrangement" during the entirety of the Joint Ventures (Dkt. #10 at p. 19).

ETD alleges that "from the beginning of the operation of the Joint Ventures" it expressed concerns to Clement that "all did not seem appropriate with respect to the allocations for costs and expenses of the Joint Ventures, the profits and losses of the Joint Ventures." (Dkt. #10 at p. 19). ETD alleges it received limited financial reports and that BBS and Clement ignored its requests for project information and pay requests (Dkt. #10 at p. 19–20). Specifically, ETD alleges that in September 2015, it sought bonding coverage for a construction project in Arkansas from Baldwin Cox (Dkt. #10 at p. 20). ETD alleges that as part of its bond application, it provided Baldwin Cox a set of financial records prepared by BBS (Dkt. #10 at p 20). ETD alleges that Baldwin Cox found the financial records reflected a $1.1 million distribution to ETD's members (Dkt. #10 at p. 20). ETD alleges that during that same period, BBS advised Earl Davis that ETD's financial records reflected a $600,000 loss (Dkt. #10 at p. 20). ETD alleges it continued to ask BBS and Clement about this apparent discrepancy and BBS and Clement refused to respond to ETD. ETD alleges that, on information and belief, Clement and BBS charged ETD-TCG, LLC excessive consulting fees (Dkt. #10 at p. 20).

ETD alleges that ETD and Clement met several times in late 2015 and early 2016 to attempt to resolve the dispute (Dkt. #10 at p.21). As a part of the discussions between Earl Davis and Craig Clement, ETD alleges Craig Clement proposed that Clement enter into a subcontract with ETD-TCG, LLC (Dkt. #10 at p. 21). Pursuant to the subcontract, Clement would perform the administration of ETD-TCG, LLC's contract with the USACE for various projects pending between the two entities (Dkt. #10 at p. 21). ETD alleges Craig Clement "made assurances to ETD" that such a subcontract was acceptable to the SBA Mentor Program and that Clement's position as a subcontractor of ETD-TCG, LLC would not negatively affect ETD's financial position in ETD-TCG, LLC (Dkt. #10 at p. 21). On February 15, 2016, ETD-TCG, LLC entered

into a subcontract (the "Subcontract") with Clement that allowed Clement to assume the role of a prime subcontractor for ETD-TCG, LLC (Dkt. #10 at p. 22); (Dkt. 10, Exhibit F).

After the execution of the Subcontract, ETD continued to serve as ETD-TCG, LLC's project manager and remained responsible for approving pay applications addressed to the USACE (Dkt. #10 at p. 22). ETD also remained responsible for approving payments to all subcontractors, including Clement, in its role as subcontractor (Dkt. #10 at p. 22). ETD alleges that Clement demanded that ETD approve all Clement's pay requests to the USACE without providing appropriate supporting documentation (Dkt. #10 at p. 22). On June 23, 2016, and July 5, 2016, ETD sent Clement a letter terminating the subcontracts between ETD-TCG, LLC and Clement (Dkt. #10 at p. 22).

ETD alleges Clement then advised its lower-tier subcontractors working on projects for the USACE that they were no longer under contract and payment was no longer assured (Dkt. #10 at p. 23). ETD also alleges that Clement informed the USACE of the dispute and that all work would cease on USACE projects (Dkt. #10 at p. 23). On July 11, 2016 and July 21, 2016, the USACE issued ETD, Clement, and ETD-TCG, LLC notices threatening to terminate the contract between the USACE and ETD-TCG, LLC for cause (the "Cure Notices") (Dkt. #10 at p. 23); (Dkt. #10, Exhibit G). In response to the Cure Notices, ETD issued a partial rescission of the cancellation of the Subcontract in order to allow lower-tier subcontractors working under Clement to continue to work on the USACE projects (Dkt. #10 at p. 23). ETD also agreed to approve pay requests from lower-tier subcontractors provided ETD received sufficient documentation establishing such subbcontrators' right to payment (Dkt. #10 at p. 23)

On October 7, 2016, Clement brought suit against ETD, alleging breach of contract, breach of fiduciary duty, defamation, conversion, unjust enrichment and fraud (Dkt. #1). On December

26, 2016, ETD filed a First Amended Original Answer, Affirmative Defenses, and Counter-Complaint (Dkt. #10). ETD brings counterclaims against Clement for breach of contract, breach of fiduciary duty, unjust enrichment, common law fraud, and statutory fraud under the Texas Deceptive Trade Practices Act ("DTPA") (Dkt. #10). ETD's Counter-Complaint included a Third-Party Complaint against BBS alleging unjust enrichment, common law fraud, and statutory fraud under the DTPA (Dkt. #10).

On January 9, 2017, Clement filed its Partial Motion to Dismiss ETD's First Amended Counterclaim (Dkt. #13). Clement seeks to dismiss ETD's statutory fraud and DTPA claims. On February 1, 2017, ETD filed a response (Dkt. #19). On January 31, 2017, Clement filed a reply (Dkt. #18).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine

whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

*Common Law Fraud*

ETD alleges that Clement "made material misrepresentations" regarding the Subcontract the parties entered into on February 15, 2016 (Dkt. #10 at p. 27); (Dkt. 10, Exhibit F). The

6

Subcontract allowed Clement to assume the role of prime subcontractor for ETD-TCG, LLC (Dkt. #10 at p. 22). ETD alleges Clement made material representations that "the Subcontract would be managed in a fair and equitable manner" (Dkt. #10 at p. 27). ETD alleges that the Subcontract instead permitted Clement, with the aid and assistance of BBS, to misdirect funds to Clement and BBS (Dkt. #10 at p. 27). ETD alleges these funds should have been paid to ETD-TCG, LLC and accrued to the benefit of ETD (Dkt. #10 at p. 27).

Clement moves to dismiss the common law fraud claim, arguing that ETD has not met the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) (Dkt. #13 at p. 7). Clement alleges that ETD has not explained "any details of Clements' supposed misrepresentations other than to allege that Clement stated that the Subcontracts would be 'fair and equitable,' and that Clement caused unspecified sums of money to be 'misdirected.'" (Dkt. #13 at p. 9). Clement also argues that ETD has not established the reasonable reliance element of a fraud claim (Dkt. #13 at p. 8).

To state a claim for fraud, a plaintiff must show: (1) a material misrepresentation or omission; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention that it should be acted upon by another party; (5) relied upon by the other party, and (6) causing injury. *Jag Media *213 Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 709 (S.D. Tex. 2004); *Ernst & Young, L.L.P v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). Under Rule 9(b), allegations of fraud are subject to a heightened pleading standard that requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Whiddon v. Chase Home Finance, LLC*, 666 F. Supp. 2d 681, 690 (E.D. Tex 2009). To state a claim for fraud, the plaintiff must plead the "who, what, when, where, and how." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 179 (5th Cir. 1997).

The Court finds that ETD has failed to plead its claim for fraud with sufficient particularity to survive the requirements of Rule 9(b). ETD requests leave to amend its complaint if more specificity is needed. Rule 15(a) directs that the Court should freely give leave when justice so requires. Fed. R. Civ. 15(a)(2). The Court agrees, and finds ETD's request for leave to amend should be granted as to ETD's common law fraud counterclaim. *See Jag Media Holdings*, 387 F. Supp. 2d at 704 (citing *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 971 (5th Cir. 1981) (finding that "[w]hen a party has failed to plead with sufficient particularity, the Court will almost always permit leave to amend to bring the complaint into compliance with the requirements of Rule 9(b).")).

*DTPA*

Clement next moves to dismiss ETD's DTPA claim, arguing ETD is not a consumer under the DTPA.

> A DTPA claim requires the claimant to establish: (1) that he is a consumer of the defendant's goods or services; (2) that the defendant committed a false, misleading, or deceptive act in connection with the lease or sale of goods or services, breached an express or implied warranty, or engaged in an unconscionable action or course of action; and (3) that such actions were the producing cause of the . . . actual damages. In order to qualify as a consumer under the DTPA a person must seek or acquire goods or services by lease or purchase and the goods or services sought or acquired must form the basis of [that person's] compliant.

*Perkins v. Bank of Am.*, 602 F. App'x 178, 182 (5th Cir. 2015) (internal citations and quotations omitted). Clement argues ETD did not purchase goods or services from Clement.

However, ETD alleges that at the time it joined the "pooling arrangement," Clement and BBS "had been involved in operating, directing and/or managing the Pooling Arrangement for several years and assigning and accepting excessive payments from the Pooling Arrangement, at the direction and with the consent" of Clement and BBS (Dkt. #10 at p. 30). ETD argues that Clement and BBS provided and facilitated accounting services and bond acquisition services for

ETD. ETD has sufficiently alleged that it was a consumer under the DTPA. Clement's motion to dismiss ETD's DTPA claim is therefore denied.

## CONCLUSION

The Court therefore **ORDERS** ETD to file an amended counterclaim as to its common law fraud counterclaim within ten (10) days of this order. It is further **ORDERED** that Clement's motion to dismiss ETD's common law fraud counterclaim is **DENIED AS MOOT** (Dkt. #13). The remainder of Clement's motion to dismiss (Dkt. #13) is hereby **DENIED**.

**SIGNED this 12th day of July, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE