# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| THE CLEMENT GROUP, LLC, | § | |
| | § | |
| v. | § | |
| | § | |
| ETD SERVICES, LLC d/b/a THE DAVITZ GROUP; E. EARL DAVIS, II; TARA DAVIS, | § | Civil Action No. 4:16-CV-00773 |
| | § | Judge Mazzant |
| | § | |
| | § | |
| v. | § | |
| | § | |
| BILL'S BOOKKEEPING SERVICE, LLC | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Bill's Bookkeeping Services, LLC's ("BBS") Motion for Summary Judgment (Dkt. #49), The Clement Group, LLC's ("Clement") Motion for Summary Judgment Against Defendants' Counterclaims (Dkt. #50), Clement's Motion for Partial Summary Judgment on Clement's Claims (Dkt. #55), and ETD Services, LLC d/b/a The Davitz Group ("ETD") and E. Earl Davis, II's ("Davis") Motion to Withdraw Certain Admissions (Dkt. #52). Having reviewed the relevant pleadings and motions, the Court finds that BBS and Clement's Partial Motion for Summary Judgment should be granted, Clement's Motion Against Defendants' Counterclaims should be granted in part, and ETD and Davis's motion should be denied.

## BACKGROUND

The United States Small Business Association ("SBA") created a Mentor/Protégé Program ("Mentor Program") to "encourage approved mentors to provide various forms of business development assistance to protégé firms." 13 C.F.R. 124.520. Clement was a mentor approved by the SBA. On May 3, 2013, Clement agreed to partner with ETD as a part of the Mentor Program to bid on federal contracts. On October 16, 2013, Clement and ETD formed the Davitz joint venture and on May 30, 2014, Clement and ETD formed the ETD-TCG joint venture. BBS began

providing book-keeping and administrative services to ETD and the two joint ventures starting in 2013.

On July 17, 2014, Clement and ETD entered into a Joint Venture Agreement ("JVA") to dictate the terms by which the ETD-TCG joint venture would operate in order to bid for a construction contract at Fort Lee, Virginia. The SBA approved the JVA. ETD and Clement entered into three addenda to the JVA to expand their construction services to more districts. The SBA approved each addenda. According to the terms of the JVA, Davis, the sole member of ETD, would be the project manager, ETD would be the managing member handling the day-to-day operations, and Clement would be the consulting project manager and provide management and technical assistance.

Upon entering the agreement with ETD in May 2013, Clement learned that ETD had significant negative equity. As a result, Clement began loaning and advancing money to ETD. Clement also suggested ETD enter into an overhead cost sharing program with Clement's other teaming partners (the "Pooling Agreement"), which ETD agreed to enter. The business relationship was beneficial for both parties and ETD's debt began to diminish. However, in 2015, Davis began demanding cash distributions from ETD's operations in the joint ventures. In April 2015, Davis made a specific request to BBS for a distribution of $150,000.00 to use as a down payment for a personal home. In December 2015, Davis discussed his desire to purchase a new family home with Clement and Davis mentioned that he needed a loan from the joint ventures. Both BBS and Clement explained to Davis, on multiple occasions, that he could not receive any distributions yet because ETD still had a negative equity.

In January 2016, after being denied a loan and a distribution from BBS and Clement, Davis wrongfully withdrew $300,000.00 from the joint venture bank account. Davis had the ability to

withdraw the amount on his own, without approval from Clement, because he set up the joint venture bank account to only require his signature for withdrawals, in violation of the JVA. On February 18, 2016, the parties entered into a settlement agreement regarding the wrongful withdrawal (the "Settlement Agreement"). According to the terms of the Settlement Agreement, Clement allowed ETD to retain $150,000.00 advanced "as a full and final payment for the anticipated future-earned profits from the joint venture operations and/or related operations on project where [Clement] is providing the bonding." (Dkt. #54, Exhibit V at p. 1). The Settlement Agreement also provided that $50,000.00 would serve as an advance of the "full and final payment for all ETD overhead costs from the joint venture operations and/or related operations on projects where [Clement] is providing the bonding." (Dkt. #54, Exhibit V at p. 1). Finally, the Settlement Agreement determined that the remaining $50,000.00 that Davis withdrew would be "an interest bearing loan." (Dkt. #54, Exhibit V at p. 1). EDT and Clement entered into a separate agreement to memorialize the terms of the loan ("the Note") (Dkt. #54, Exhibit W). The parties agreed that the Settlement Agreement would also be a release of the claims "[a]ll debt/equity matters go away and everyone is back to zero and we each walk away clean, other than the $50,000[.00] loan. . . ." (Dkt. #54, Exhibit V at p. 1). To ensure the completion of the joint ventures' ongoing projects, the Settlement Agreement stated that Clement would enter into subcontracts with the joint venture to relieve administrative burden on ETD (Dkt. #54, Exhibit V at p. 1).

After the parties signed the Settlement Agreement, Davis made another unauthorized withdrawal in April 2016, allegedly for taxes. Upon investigation, the parties discovered that it was for ETD's taxes, separate and apart from its involvement in the joint venture. On May 16, 2016, Davis did in fact purchase a family home for $510,000.00. Further on June 20, 2016, Davis withdrew all remaining funds in the ETD-TCG joint venture account, totaling $2,063,691.84, with

"Distribution per JVA" written on the memo line. Davis sent Clement a check for $999,204.00, claiming that this was Clement's share of the joint venture profits; however, the joint venture projects were still ongoing and the profits for each party were not yet determinable. At this point, Clement and ETD agreed to open a new joint venture bank account to complete the joint venture projects, which required two signatures before withdrawals were made ("the Macrum Account"). Clement deposited the $999,204.00 into the Macrum Account and ETD returned $373,316.35 of the amount it withdrew into the Macrum Account.

On July 5, 2016, Davis terminated five subcontracts between the ETD-TCG joint venture and Clement, without discussing the termination with Clement. The ETD-TCG joint venture began to default on its commitments to the Government and was asked to cure the default. Clement and ETD responded to the Government, and ETD promised, among other things, that it would return all funds. ETD has yet to return the funds and stopped making payments on the Note.[1]

Based on this set of facts, Clement sued Defendants ETD, Davis, and Tara Davis on October 7, 2016 asserting causes of action for breach of contract, breach of fiduciary duty, defamation, conversion, unjust enrichment, and fraud (Dkt. #1). Defendants responded to the suit, asserted counterclaims against Clement, and added a third-party complaint against BBS on December 5, 2016 (Dkt. #8). Defendants amended their answer (Dkt. #10) and then filed their Second Amended Original Answer, Affirmative Defenses and Counter-Complaint on July 24, 2017 (Dkt. #44). To briefly summarize Defendants' allegations, Defendants assert that BBS and Clement falsely represented that in order to obtain any loan from Clement they had to enter the Pooling Agreement. Defendants maintain that, through this Pooling Agreement, BBS and Clement were able to manipulate overhead costs and move funds around to benefit BBS and Clement.

---

[1] The Court uses the facts as set out in Clement and BBS's motions for summary judgment because the Court presumes that Defendants do not contest the facts as they are set out in the motions, as will be further discussed.

Defendants further allege that they cancelled the subcontract between the joint ventures and Clement because Clement denied Defendants access to the books and receipts needed to verify amounts owed to Clement under the subcontract. Defendant sued BBS for common law fraud, unjust enrichment, and statutory fraud in violation of the Texas Deceptive Trade Practices Act ("DTPA"). Defendants sued Clement for breach of contract, breach of fiduciary duty, common law fraud, unjust enrichment, and statutory fraud in violation of the DTPA.

On October 10, 2017, BBS filed its motion for summary judgment (Dkt. #49) and Clement filed its motion for summary judgment against Defendants' counterclaims (Dkt. #50). Responses to these motions were due on October 24, 2017. *See* LOCAL RULE CV-7(e).[2] Defendants did not file responses by October 24, 2017. In fact, as of the date of this Order, Defendants have not filed responses to the motions. Because Defendants did not file responses to the motions, the Court presumes that Defendants do not controvert the facts set out by BBS and Clement and has no evidence to offer in opposition to the motion. LOCAL RULE CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by the movant and has no evidence to offer in opposition to the motion.").

Additionally, on October 11, 2017, Clement filed a motion for partial summary judgment (Dkt. #55). A response to this motion was due on October 25, 2017. *See* LOCAL RULE CV-7(e).[3] Defendants did not file a response by October 25, 2017. In fact, as of the date of this Order, Defendants have not filed a response to the motion. Because Defendants did not file a response to the motion, the Court presumes that Defendants do not controvert the facts set out by Clement and

---

[2] The current version of the Local Rules gives a party responding to a motion for summary judgment twenty-one days to respond; however, the Court uses the Local Rules in effect at the time the motion was filed, which gives a party responding to a motion for summary judgment fourteen days to respond.

[3] The current version of the Local Rules gives a party responding to a motion for summary judgment twenty-one days to respond; however, the Court uses the Local Rules in effect at the time the motion was filed, which gives a party responding to a motion for summary judgment fourteen days to respond.

5

has no evidence to offer in opposition to the motion. LOCAL RULE CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.").

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning*

*News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

### I. Clement's Partial Motion for Summary Judgment on Clement's Claims

Clement moves for partial summary judgment asking the Court to grant relief on its breach of contract claim or, in the alternative, its unjust enrichment claim (Dkt. #55). Clement alleges that Defendants have breached (A) the JVA, (B) the Settlement Agreement, and (C) the Note.

"In Texas, the elements of a claim for breach of contract are: (1) a valid contract between the plaintiff and the defendant, (2) performance or tender of performance by the plaintiff, (3) breach by the defendant, and (4) damage to the plaintiff as a result of the breach." *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 669 F. App'x 219, 220 (5th Cir. 2016) (quoting *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 858 (5th Cir. 2014)). Clement maintains that all four elements are met for all three contracts. Looking to the motion and the evidence Clement

provided, there is no genuine issue of material fact regarding Clement's claim for breach of contract.

Clement asks the Court to order Defendants to pay $741,171.49 into either the Macrum Account or into the registry of the Court, based on the $50,000.00 that Davis withdrew on April 11, 2016, and the $1,064,487.84 that Davis kept following the June 20, 2016 withdrawal, less the $373,316.35 that ETD retuned into the Macrum Account. Further, Clement asks the Court to order Defendants to pay Clement $56,170.83 owed under the Note. The Court finds that this amount is supported by the evidence and the Court presumes that the Defendants have no evidence to offer to contradict this amount. *See* LOCAL RULE CV-7(d). Further, the Court finds the support for the contention that Defendants owe Clement $56,170.83. Such amounts will be incorporated into a final judgment at the end of the case.

## II. BBS's Motion

BBS moves for summary judgment on the three claims that Defendants asserted against BBS: (1) fraud; (2) unjust enrichment; and (3) violations of the DTPA (Dkt. #49). The Court will address each claim.

### 1. Fraud

BBS argues that Defendants cannot prove fraud because it never made a representation, false or otherwise, to Defendants. BBS directs the Court's attention to Davis's deposition, in which he could not identify any BBS representative that made a representation regarding the conditions of the loan or the Pooling Agreement (Dkt. #49, Exhibit D at 255:4–257:15). Further, BBS argues that the Defendants have not even offered any evidence that any representation was, in fact, false (Dkt. #49, Exhibit D at 257:4–15).

8

To prove fraud under Texas law, "'[t]he elements of fraud are a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, *which was intended to be acted upon*, which was relied upon and which caused injury.'" *Sears Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994) (emphasis in original) (quoting *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990)). After a review of the evidence before the Court, in a light most favorable to Defendants, the Court finds that there is no evidence of a false representation made to Defendants by BBS.

### 2. Unjust Enrichment

BBS avers that unjust enrichment is not a cause of action, but is only a theory of recovery or a remedy. Further, BBS maintains to recover under this theory of unjust enrichment, Defendant would need to prove fraud.

"Unjust enrichment is an equitable theory of recovery where a party has obtained a benefit from another by fraud, duress or the taking of an undue advantage, and the receipt of those benefits is not governed by a contract." *Mason v. Mason*, 2014 WL 199649, at *5 (Tex. App.—Amarillo Jan. 13, 2014, no pet.) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 154 (Tex. App.—Texarkana 1988, writ denied)). As such, Defendants would need to prove that BBS has obtained a benefit by fraud because that is the only allegation contained in their Second Amended Answer, Affirmative Defenses, and Counter-Compliant that could give rise to unjust enrichment as a remedy (*See generally* Dkt. #44). The Court previously found that there is no evidence of one of the essential elements of Defendants' claim for fraud against BBS. As such, there is no evidence to support recovery under a theory of unjust enrichment.

9

### 3. DTPA

BBS asserts that Defendants cannot recover under the DTPA because Defendants do not qualify as a consumer and because the transaction was over $500,000.00. BBS maintains that these are exceptions to recovery under the DTPA.

The DTPA states that "[n]othing in this subchapter shall apply to a cause of action arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000[.00], other than a cause of action involving a consumer's residence." TEX. BUS. & COM. CODE ANN. § 17.49(g). The evidence demonstrates that this is a transaction that is more than $500,000.00 and does not involve the purchase of a residence.[4] Accordingly, Defendants are exempted from asserting a DTPA claim in this case.

## III. Clement's Motion Against Defendants' Counterclaims

Clement moves for summary judgment on Defendants' counterclaims arguing (1) Defendants are precluded from asserting their causes of action by the doctrine of accord and satisfaction and (2) that Defendants lack standing to sue under the DTPA (Dkt. #50). The Court will address each argument.

### 1. Accord and Satisfaction

Clement argues that the Settlement Agreement constitutes an accord and satisfaction for all of Defendants' causes of action. Clement continues that "[t]he gravamen of Defendants' claims against Clement are threefold, alleging Clement: (1) manipulated the overhead cost sharing expenses; (2) wrongfully retained joint venture profits that belonged to ETD; and (3) used the subcontracts between Clement and the [Davtiz joint venture] to misdirect additional funds to Clement." (Dkt. #50 at p. 19 (citations omitted)). Clement maintains that "Defendants forfeited

---

[4] The Court need not address BBS's argument that Defendants are not consumers under the DTPA, because it finds that, even if they are consumers, they are exempt.

any claims as to anticipated profits and overhead expenses," and "any other fees or costs that Defendants might have disputed . . . were knowingly waived when Clement and ETD agreed to a mutual release where 'everyone is back to zero and we each walk away clean.'" (Dkt. #50 at p. 19 (quoting Dkt. #54, Exhibit U at p. 1)). Clement asserts that "[w]ith this release, any disputes between the parties up until that point were reconciled." (Dkt. #50 at p. 18).

> The common law defense of accord and satisfaction "rests upon a contract, express or implied, in which the parties agree to the discharge of an existing obligation by means of a lesser payment tendered and accepted." The evidence must establish an assent of the parties to an agreement that one party will give and the other party will accept something that is different from what each expected from the old contract. In addition to consideration, there must be a meeting of the minds and an unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation. The satisfaction is the actual performance of the new agreement.

*Ramos v. Walters*, No. 01-16-00514-CV, 2017 WL 2545095, at *3 (Tex. App.—Houston [1st Dist.] June 13, 2017, no pet. h.) (quoting *Lopez v. Munoz, Hockema, & Reed, LLP*, 22 S.W.3d 857, 863 (Tex. 2000)) (citing *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex. 1969); *Ostrow v. United Bus. Machs, Inc.*, 982 S.W.2d 101, 104 (Tex. App.—Houston [1st Dist.] 1998, no pet.)). The defense of accord and satisfaction is not limited to breach of contract claims. Indeed, Texas courts have held that "[c]laims arising out of the commission of a tort are particularly applicable subjects for accord and satisfaction." *Case Funding Network L.P. v. Anglo-Dutch Petroleum Intern., Inc.*, 264 S.W.3d 38, 49 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (quoting *Marsalis v. Garre*, 391 S.W.2d 522, 525 (Tex. Civ. App.—Amarillo 1965, writ ref'd n.r.e.)).

With no opposition and after a review of the evidence, the Court finds that the parties entered into the Settlement Agreement, which provided "a sum of $150,000 as a full and final payment for the anticipated future-earned profits from the joint venture operations and/or related operations on projects where [Clement] is providing the bonding." (Dkt. #54, Exhibit V at p. 1).

11

This is a full satisfaction of all Defendants' claims for any anticipated profits it would have received from the joint ventures. Further, the Settlement Agreement provides that, ETD retained "a sum of $50,000[.00] as full and final payment for all ETD overhead costs from the joint venture operations and/or related operations on projects where [Clement] is providing the bonding." (Dkt. #54, Exhibit V at p. 1). This provides full satisfaction regarding Defendants' claims for any overhead costs, including its claims for common law fraud regarding the Pooling Agreement, because that is a complaint about overhead costs. Finally, the Settlement Agreement provides "[a]ll debt/equity matters go away and everyone is back to zero and we each walk away clean." (Dkt. #54, Exhibit V at p. 1.). This provides a release for any claims that Defendants may have had at the time the Settlement Agreement was signed on February 18, 2016.

However, Clement fails to address Defendants' claims that arose after the parties signed the Settlement Agreement that are not based on overhead cost sharing and profits. Specifically, Defendants allege a breach of contract arguing that Clement failed to provide: (1) "requested scheduling information for projects being prosecuted by the joint ventures;" (2) "documentation necessary to support the requests for payment to the ETD-TCG joint venture;" and (3) "documentation necessary to support the requests for payment from the subcontractors, including without limitation The Clement group, LLC, in its capacity as a subcontractor to the Joint Venture." (Dkt. # 44 at p. 23–24). According to Defendants Second Amended Original Answer, Affirmative Defenses and Counter-Complaint, these actions took place both before and after the Settlement Agreement. (Dkt. #44 at pp. 19–20, 23). The allegations pertaining to Clement's conduct after the Settlement Agreement would not be satisfied by the Settlement Agreement. Without any other argument from Clement, these allegations survive Clement's motion.

## 2. DTPA

Similar to BBS, Clement argues that Defendants are not able to collect under the DTPA because they are exempted under the statute. The Court previously addressed BBS's argument, and its analysis is equally applicable to Clement's argument. As such, the Court finds that there is no genuine issue of material fact as to Defendants' claims on the DTPA.

## IV. ETD and Davis's Motion to Withdraw Admissions

ETD and Davis ask the Court to set aside inadvertent deemed admissions. ETD and Davis maintain that their counsel inadvertently set the due date on the calendar for a month later than the actual due date, which was an honest mistake. ETD and Davis assert that the correct due date was March 27, 2017, and they served their responses on April 25, 2017. ETD and Davis argue that Clement is not prejudiced because Defendants have agreed to extend the discovery period and have agreed to present Defendants for follow-up depositions. Clement responds that this does not satisfy the two-prong test established by the Federal Rules of Civil Procedure. Clement argues that the merits of the case are not subserved in this case and that Clement is prejudiced.

Pursuant to Federal Rule of Civil Procedure 36(a)(3), "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and singed by the party or its attorney." When a "matter is admitted under this rule [it] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." FED. R. CIV. P. 36(b). "[T]he court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the actions on the merits." FED. R. CIV. P. 36(b).

ETD and Davis's argument in support of the first element are conclusory, unpersuasive, and belied by its lack of participation in the dispositive motions. To support the first element, ETD and Davis argue that "[r]efusing to permit withdrawal of the deemed admissions would have the practical effect of eliminating Defendants' presentation of the merits of the case." (Dkt. #52 at p. 15). This is the only argument that ETD and Davis make in the "Legal Argument" section of the motion. If the Court looks to the "Background Facts" section, it can find more explanation that Davis is looking to establish that he is not individually responsible for the actions he took on behalf of the entity, ETD and that "[m]any of the requests for admission directed to Davis seek admissions that certain of his actions, taken individually, impose responsibility on the ETD Services, LLC or alternatively, actions taken by Davis in his representative capacity impose responsibility on him individually." (Dkt. #52 at p. 2). Clement asserts that this does not preserve Defendants' ability to effectively present the merits of their case, but rather the focus is shielding Davis from personal liability for his wrongful withdrawals. Clement argues that allowing the withdrawal of these admissions would be contradictory to the record and Defendants have not offered any evidence to support their motion.

"In making the first assessment, a court should consider whether refusing to permit withdrawal or amendment would have the practical effect of eliminating any presentation of the merits of the case, whether the admission is contrary to the record of the case, whether the admission is no longer true because of changed circumstances, and whether a party had made an honest error." *Powerhouse Prods., Inc. v. Widgery*, No. 4:07-cv-071, 2008 WL 4331480, at *2 (E.D. Tex. Sept. 17, 2008) (citing *Le v. Cheesecake Factory Rests. Inc.*, No. 06-20006, 2007 WL 715260, at *5–6 (5th Cir. Mar. 6, 2007)). Here, the Court finds that ETD and Davis have not submitted any support for their contention that the denial to withdraw admissions would have the

14

practical effect of eliminating presentation on the merits. ETD and Davis have not shown that the admissions are contrary to the record of the case or that the admissions are no longer true because of any changed circumstances. As opposed to making an argument regarding the merits of the case, ETD and Davis present an argument suggesting that the admissions must be withdrawn to protect Davis from personal liability. However, Clement already filed a partial motion for summary judgment on its claims and Defendants did not respond to the motion. This creates the presumption that Defendants have no evidence to contradict the evidence in the motion and that Defendants agree with the facts as presented in the motion. The Court found that there are sufficient grounds to grant Clement's motion. As such, allowing the admission to be withdrawn would not affect the presentation of the merits of the case, Defendants' own failure to engage in the dispositive motion practice of the case affected the presentation of the merits of the case.

Further, any possible prevention of a presentation on the merits is outweighed by the prejudice to Clement. Clement on two occasions notified Defendants that the responses to admissions were late and Defendants did not respond to these notices. Defendants waited until August 9, 2017, over four months after they missed their deadline, less than two weeks before the discovery deadline, and the morning of Davis's deposition, to inform Clement of their intent to withdraw and amend their responses. ETD and Davis waited even longer until filing their motion, waiting until October 10, 2017, over six months after they missed their deadline, less than four months before the final pretrial conference, and after the close of the discovery period to ask the Court to withdraw their admissions. *See Le*, 2007 WL 715260, at *3 (citing *Brach Banking & Trust Co. v. Deutz-Allis Corp.*, 120 F.R.D. 655, 658–59 (E.D.N.C. 1988)) (holding that courts may consider "the diligence of the party seeking withdrawal and the adequacy of time remaining for

15

additional discovery before trial"). At this stage, Clement made tactical decisions in its case based on these admissions and would now be prejudiced if the admissions were withdrawn.

Even if the Rule 36(b) requirements were satisfied in this case, which they are not, the Court may use its discretion in granting a motion to withdraw. FED. R. CIV. P. 36(b). Based on this set of facts and the Defendants delay in seeking to remedy their mistake, the Court, in its discretion, finds that the motion should be denied.

## CONCLUSION

It is therefore **ORDERED** BBS's Motion for Summary Judgment (Dkt. #49) is **GRANTED**, Clement's Motion for Summary Judgment Against Defendants' Counterclaims (Dkt. #50) is **GRANTED in part**, and Clements's Motion for Partial Summary Judgment on Clement's Claims (Dkt. #55) is **GRANTED** and ETD and Davis's Motion to Withdraw Certain Admissions (Dkt. #52) is **DENIED**.

It is further **ORDERED** that all of Defendants' claims against BBS are **DISMISSED WITH PREJUDICE**.

The Court will proceed on Clement's claim for breach of fiduciary duty, defamation, conversion, and fraud and Defendants' claim for breach of contract based on the failure to provide access to records after the Settlement Agreement.

**SIGNED this 17th day of January, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE